**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CTN HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-10603 (___)<br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION AND HEARING PROCEDURES FOR, AND APPROVING RESTRICTIONS ON, CERTAIN ACQUISITIONS OR TRANSFERS OF, AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO, INTERESTS IN THE DEBTORS' ESTATES**

The above-captioned debtors and debtors in possession (the "**Debtors**") respectfully move (the "**Motion**") as follows:

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit B** (the "**Interim Order**") and **Exhibit C** (the "**Final Order**" and, together with the Interim Order, the "**Proposed Orders**" and, once entered, each, an "**Order**"), enforcing the automatic stay by establishing procedures, substantially in the form attached hereto as **Exhibit A** (the "**Procedures**") and incorporated herein by reference, intended to protect the Debtors' estates against the possible loss of valuable tax attribute assets and their carryover. The Orders and Procedures would (a) establish and implement restrictions on, and notification

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214), Catona Climate Solutions, LLC (3375) and Zero Carbon Holdings, LLC (1679). The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94101-5401.

requirements regarding the Beneficial Ownership[2] of, certain acquisition or transfers of, and declarations of worthlessness with respect to, the Debtors' (the "**Company**") existing Company Stock (as defined herein) for the purpose of protecting and preserving the potential value of the Debtors' Tax Attributes (as defined below) to the extent required (and not exempted due to the application of the Bankruptcy Code(as defined herein)) under the applicable provisions of the I.R.C., including, but not limited under I.R.C. §§ 381, 382, 384 (and the underlying U.S. Treasury Regulations thereunder), (b) direct that any acquisition, purchase, sale or other transfer of or exchange, or declaration of worthlessness with respect to, Company Stock in violation of the Procedures shall be null and void *ab initio*, (c) approve the form of notice notifying holders of Company Stock of the Procedures, and (d) grant related relief.

## JURISDICTION AND VENUE

2.  The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

---

[2] "**Beneficial Ownership**" means ownership in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, as amended (the "**I.R.C.**") and the United States Department of the Treasury (the "**Treasury**") regulations thereunder (other than section 1.382-2T(h)(2)(i)(A) of the Treasury regulations), and includes direct, indirect, and constructive ownership of Company Stock (*e.g.,* including that (a) a holding company would be considered to beneficially own all Company Stock owned by its subsidiaries, (b) a partner in a partnership would be considered to beneficially own its proportionate share of any Company Stock owned by such partnership, (c) an individual and such individual's family members may be treated as one individual, (d) Persons acting in concert to make a coordinated acquisition of Company Stock may be treated as a single entity, and (e) a holder would be considered to beneficially own Company Stock that such holder has an Option to acquire to the extent provided in section 1.382-4(d) of the Treasury regulations). An "**Option**" to acquire Company Stock includes all interests described in section 1.382-4(d)(9) of the Treasury regulations, including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, or contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  "**Beneficial Ownership**" and "**Beneficial Owner**" shall have correlative meanings.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent, pursuant to rule 9013-1(f) of the *Local Rules for the United States Bankruptcy Court for the District of Delaware* (the "**Local Rule(s)**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of these cases and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), as supplemented by rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule(s)**"), and Local Rule 9013-1(m).

## BACKGROUND

### I.    General Background.

6.      On March 30, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in these cases.

7.      The Debtors are a climate finance company that sells carbon credits to enterprise clients sourced from the Debtors' diverse project developer network. To ensure a reliable supply of the highest quality carbon, the Debtors partner with project developers by providing financial investment, project monitoring, technical assistance and marketing services to carbon credit

generators. These partnerships in turn yield high-quality carbon credits made available to the Debtors' customers through a variety of offered products.

8.  Debtor CTN Holdings, Inc., which is the Debtors' holding company, is a private company that, as of March 12, 2025, has the following stock issued and outstanding: (a) 45,498,680 shares of common stock; and (b) 73,769,834 shares of preferred stock of varying classes. Debtor CTN Holdings, Inc. also has 22,625,741 in various stock warrants, options and restricted stock units issued and outstanding. For purposes of the relief sought by this Motion, and further to protect and preserve the potential value of the Debtors' Tax Attributes, the term "**Company Stock**" shall mean any and all stock in the Company, whether common, preferred or by right of a warrant, option or restricted stock unit, or other Option or right to acquire stock in the Company (such as, without limitation, debt convertible into equity in the Company or any other similar instruments), that qualifies or, upon exercise, will qualify as "stock" under the applicable sections of the I.R.C, including, but not limited to sections 381, 382, 383, 384, and 1504 of the I.R.C., and other related provisions thereunder.

9.  While private, there remains the potential for the future acquisition or transfer of Company Stock during the pendency of the Chapter 11 Cases.

10. Additional detail about the Debtors, their business, the events leading up to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Miles Staglik in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed concurrently herewith and incorporated herein by reference.

**II.     The Tax Attributes.**

11.     The Debtors estimate based on current calculations that, as of December 31, 2023, and without limitation, they have at least a net operating loss ("**NOL**") carryforward for U.S. federal income tax purposes of approximately $580.3 million and NOL carryforwards for state and local income tax purposes of approximately $251.2 million (collectively, the "**Tax Attributes**"). The Debtors further expect that they may generate additional NOLs and other Tax Attributes for 2024 and 2025 (and other years as applicable) and during the pendency of the Chapter 11 Cases. Because the I.R.C. and certain state tax laws permit corporations to carry forward NOLs and other Tax Attributes to offset future income or taxes, subject to certain limitations and further certain exceptions when under the Bankruptcy Code (under sections 381, 382, 383, and 384, among others, of the I.R.C.), the Debtors' NOL carryforwards and other Tax Attributes are valuable assets of their estates. *See, e.g.,* I.R.C. §§ 39, 172. The above amounts are merely estimates, remain subject to change, and the Debtors reserve all rights to all NOLs and Tax Attributes (including, without limitation, all applicable tax credits).

12.     The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors may be able to carry forward certain Tax Attributes to offset future taxable income or directly offset tax liability in future years. Such Tax Attributes, subject to possible limitations under the current I.R.C., may also be utilized by the Debtors to offset taxable income, if any, generated by transactions consummated during the Chapter 11 Cases. Failure to preserve such assets could cause the Debtors' estates to suffer a significant tax liability and economic harm to the detriment of stakeholder interests. Accordingly, protecting and preserving the value of the Tax Attributes inures to the benefit of all of the Debtors' stakeholders.

**III.    An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes.**

13.    To protect their ability to preserve and utilize the Tax Attributes the Debtors need the ability to enforce the automatic stay to preclude any transfers of Company Stock and to monitor and possibly object to other changes in the ownership of Company Stock and claims made with respect to a worthless stock deduction which may trigger adverse change in control provisions under the applicable provisions of the I.R.C., including, but not limited to, sections 381, 382, 383, and 384 of the I.R.C.  Acquisitions and transfers of Company Stock could adversely affect the Debtors' future ability to utilize their Tax Attributes and other tax items if:

(a)    too many blocks of Company Stock equal to 5% or greater of the Debtors' stock (as measured for tax purposes) are created through acquisitions, purchases, sales, or issuances, or too many shares are added to or sold from such blocks, such that, together with the previous trading by "5% shareholders" during the preceding three-year period, an Ownership Change (as defined below) is triggered prior to the consummation of a confirmed chapter 11 plan (as discussed further below); or

(b)    any 50% Shareholder (as defined below) claims a worthless stock deduction.

14.    The use of Tax Attributes is subject to certain statutory limitations under current U.S. tax law. In particular, and not withstanding certain exceptions under the I.R.C., a corporation that experiences an Ownership Change is limited in its ability to offset future income with its NOL carryforwards and certain other Tax Attributes under section 382 of the I.R.C. ("**section 382**") and with certain other credit carryforwards under section 383 of the I.R.C. ("**section 383**").  For purposes of section 382 and section 383, an "**Ownership Change**" generally occurs when the percentage of a company's equity held by one or more "5% shareholders" (as defined in section 382 and the Treasury regulations promulgated thereunder) increases by 50 percentage points or more over the lowest percentage of stock owned by those shareholders at any time during a three-year rolling period.

6

15. A single shareholder can trigger an Ownership Change. For example, if a 10% shareholder purchased additional stock and became a 61% shareholder, the percentage of stock owned by 5% shareholders would have increased by 51 percentage points, thereby causing an Ownership Change. In this example, an Ownership Change has occurred because, at the outset of the three-year rolling period no single 5% shareholder held more than 50% of shares, the 10% shareholder was the one major shareholder, and the remaining 90% of shares were owned by multiple shareholders, none of whom were a 5% shareholder. By the end of the three-year rolling period, a shift of more than 50 percentage points in the ownership occurred by virtue of the 10% shareholder becoming a 61% shareholder.

16. An Ownership Change can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." I.R.C. § 382(g)(4)(D). A 50-percent shareholder is any Person[3] (or group of people that is treated as a single entity under the applicable rules) with Beneficial Ownership of 50% or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed (a "**50% Shareholder**"). *Id.* If a 50% Shareholder still owns the corporation's stock at the end of the taxable year, section 382 and section 383 essentially treat such Person as newly purchasing the stock on the first day of the next taxable year. For example, if a Person with 50% of a corporation's stock claims a worthless stock deduction with respect to the 2024 tax year, but does not dispose of such stock in 2024, that Person is treated (a) as not having owned the stock at the end of 2024 and (b) as having purchased the stock on the first day of the 2025 tax year. That

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Procedures.

deemed purchase would cause an Ownership Change because the 50% Shareholder would be deemed to have a 50-percentage point increase in its stock ownership.

17. If a corporation experiences an Ownership Change, then section 382 and section 383 generally limit the amount of tax attributes and certain other tax items that may be utilized in each subsequent tax period to offset income or tax liabilities. Subject to a number of potentially applicable adjustments, this annual limitation is generally equal to the product of the equity value of the corporation immediately before the Ownership Change multiplied by a long-term tax-exempt rate prescribed by the Treasury.[4] If the Debtors were to undergo an Ownership Change at a time prior to the consummation of a chapter 11 plan, the resulting annual limitation would significantly reduce or eliminate the ability of the Debtors to reduce current or future income with the Tax Attributes and could result in the Debtors' inability to utilize a substantial portion of their Tax Attributes.

18. By contrast, the rules relating to the calculation of the limitations on the use of tax attributes are more generous in the context of an Ownership Change that occurs pursuant to a confirmed chapter 11 plan, particularly where the plan involves the retention or receipt of at least 50% of the equity of the reorganized debtor by shareholders or "qualified creditors." *See* I.R.C. §§ 382(l)(5) and (6). In particular, a special rule under section 382(l)(5) of the I.R.C. ("**section 382(l)(5)**") would apply if shareholders and "qualified creditors" of the Debtors receive stock pursuant to a chapter 11 plan of reorganization constituting at least 50% of the total value and voting power of the Debtors' stock immediately after the ownership change. Alternatively, a special rule under section 382(l)(6) of the I.R.C. ("**section 382(l)(6)**") would apply if the Debtors do not satisfy the eligibility requirements of section 382(l)(5) or elect out of that provision.

---

[4] Rev. Rul. 2024-17, 2024 I.R.B. 424.

19. Under section 382(l)(5), the limitations imposed by section 382 do not apply to a debtor that undergoes an ownership change as a result of the consummation of a chapter 11 plan if the plan provides that the Persons who owned the debtor's stock immediately before the relevant ownership change and/or "qualified creditors" emerge from the reorganization owning (as a result of their prior ownership of stock or claims that are "qualified indebtedness") at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change. *See* I.R.C. § 382(l)(5)(A). "Qualified creditors" are, in general, creditors who (a) held their claims continuously for at least 18 months at the time the bankruptcy petition is filed or (b) hold claims incurred in the ordinary course of the debtor's business and held those claims continuously since they were incurred.

20. Claims described in the preceding sentence constitute "qualified indebtedness." *See* I.R.C. § 382(l)(5)(E); Treas. Reg. § 1.382-9(d)(2). Importantly, a "*de minimis*" rule generally provides that a creditor that does not meet either of the foregoing requirements for the sole reason that its claim was not held continuously for a sufficient period may still be considered a qualified creditor if that creditor will directly or indirectly own less than 5% of the reorganized debtor's equity immediately after the ownership change.[5] *See* Treas. Reg. § 1.382-9(d)(3).

21. The Debtors seek to avoid any Ownership Changes before the consummation of a chapter 11 plan. It has not yet been determined if the Debtors will attempt to avail themselves of the special relief afforded by section 382(l)(5) or section 382(l)(6) for any potential changes in ownership under a confirmed chapter 11 plan. However, if the relief requested herein is not granted,

---

[5] This *de minimis* rule does not apply to claims beneficially owned by a Person whose participation in formulating a chapter 11 plan makes evident to the debtor (whether or not the debtor had previous knowledge) that the Person has not owned the claim for the requisite 18-month period. In that event, in order for the Person to be treated as a qualified creditor, the debtor must establish that the claim was incurred in the ordinary course of the debtor's business and the creditor has held the claim continuously since it was incurred.

there is a significant risk that, as a result of acquisition or transfers in interests in the Debtors, the Debtors could inadvertently undergo an Ownership Change before consummation of such a plan and that the use of the Tax Attributes could be permanently impaired and limited. Even if the Debtors are ultimately unable to satisfy the requirements of section 382(l)(5), or if they were to determine that it is more advantageous to elect not to accept its benefits, it would still be in the best interest of the Debtors and their estates to restrict Company Stock transactions that could result in an Ownership Change of the Debtors before the consummation of a chapter 11 plan.

22. If the transactions contemplated by a chapter 11 plan would cause an Ownership Change, the Debtors could qualify for the favorable valuation rule of section 382(l)(6) only if that Ownership Change occurs pursuant to the consummation of the plan. Under section 382(l)(6), if the Debtors experience an Ownership Change pursuant to a chapter 11 plan and section 382(l)(5) does not apply (either because the Debtors elect out of that provision or because certain requirements are not met), the value of the reorganized Debtors' equity for the purposes of calculating the limitation under section 382 would reflect the increase in value of the reorganized Debtors' equity resulting from the restructuring of creditor claims under such plan. Thus, to the extent that the value of the reorganized Debtors' equity is greater as a result of a chapter 11 plan (compared to the value of the Debtors' equity prior to the transactions contemplated by such plan), section 382(l)(6) would provide for a greater annual limitation than would otherwise be obtained under section 382 for an Ownership Change that occurs prior to the consummation of the plan.

**IV. The proposed Procedures for acquisitions or transfers of, or declarations of worthlessness with respect to, Company Stock.**

23. The Procedures are the mechanism by which the Debtors propose that they would monitor and, if necessary, object to certain acquisitions or transfers of Beneficial Ownership of

10

Company Stock and declarations of worthlessness with respect to Company Stock to preserve the Tax Attributes. The Procedures are attached hereto as **Exhibit A**.

24. The relief requested herein is tailored as narrowly as is reasonable to permit certain Company Stock trading to continue, subject only to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws. Specifically, the Procedures would affect only (a) holders of the equivalent of 4.5% or more of the shares of issued and outstanding Company Stock, (b) Persons who are interested in purchasing or otherwise acquiring sufficient shares of Company Stock to result in such Person becoming a holder of 4.5% or more of the shares of issued and outstanding Company Stock, and (c) any 50% Shareholder seeking to claim a worthless stock deduction. The proposed restrictions are crucial because, once shares of Company Stock are transferred or accumulated or a claim is made with respect to a worthless stock deduction, the transaction arguably might not be reversible for tax purposes, though it should be null and void under section 362 of the Bankruptcy Code.

## BASIS FOR RELIEF

### I. The Tax Attributes are Property of the Debtors' Estates.

25. It is well established that a debtor's NOL carryforwards are property of its estate and are protected by section 362 of the Bankruptcy Code. The Court of Appeals for the Second Circuit, in its seminal decision of *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, affirmed the application of the automatic stay and upheld a permanent injunction against a parent corporation that sought to take a worthless stock deduction relating to the stock of its subsidiary, who was the debtor in that case. *See Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.),* 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991). Observing that the worthless stock deduction would have adversely affected the subsidiary's ability to use its NOL carryforwards post-bankruptcy (in this context, the

11

worthless stock deduction would result in a section 382 limitation of zero), the Second Circuit held that the subsidiary's NOL carryforwards were property of the estate under the broad language of section 541 of the Bankruptcy Code:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, "[a] paramount and important goal of Chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue." Including the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* at 573 (citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (quoting *Prudential Lines*, 928 F.2d at 572)); *Nisselson v. Drew Indus. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."). The Second Circuit then held that the parent corporation's attempt to claim a worthless stock deduction for the stock of its debtor subsidiary would effectively eliminate the value of the debtor's NOL carryforwards and, thus, would be an act to exercise control over estate property in violation of the automatic stay under section 362 of the Bankruptcy Code. *See Prudential Lines*, 928 F.2d at 573–74. The Third Circuit has reaffirmed this principle that NOLs are property of the estate. *See In re Majestic Star Casino, LLC,* 716 F.3d 736, 754 (3d Cir. 2013) ("[The] right to carryforward [the] $74 million NOL to offset future income is property of the [subsidiary's] estate within the meaning of § 541." (quoting *Prudential Lines*, 928 F.2d at 571)). In addition, shortly before the Second Circuit issued its decision in *Prudential Lines*, the Eighth Circuit adopted the reasoning of the lower court in *Prudential Lines* and also held that NOL carryforwards comprise property of the estate. *See Gibson*

*v. United States (In re Russell)*, 927 F.2d 413, 417–18 (8th Cir. 1991) (citing *In re Prudential Lines, Inc.*, 107 B.R. 832, 836 (Bankr. S.D.N.Y. 1989), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991)). The Eighth Circuit similarly found that NOL carryforwards were property of a debtor's estate for the purpose of determining whether an irrevocable election to carry forward NOLs was an unauthorized post-petition transfer. *See id.*

## II. The Automatic Stay and the Court's equitable powers bar any transfer that would diminish the Debtors' Tax Attributes.

26.     Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, "'where a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay.'" *In re Majestic Star Casino*, 716 F.3d at 754 (quoting *Prudential Lines*, 928 F.2d at 574). The Second Circuit in *Prudential Lines* held that, "despite the fact that the [parent corporation's] action [of filing for a worthless stock deduction] is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate." *Prudential Lines*, 928 F.2d at 574.

27.     The Second Circuit also held that a permanent injunction was supported by the court's equitable powers under section 105(a) of the Bankruptcy Code and refused to disturb the bankruptcy court's finding that elimination of the debtor's ability to apply its NOL to offset income on future tax returns would impede its reorganization. *See Prudential Lines*, 928 F.2d at 574.

28.     Similarly, in *In re Phar-Mor, Inc.*, chapter 11 debtors moved to prohibit any transfer of the debtors' stock that could have triggered the section 382 limitation. 152 B.R. 924 (Bankr. N.D. Ohio 1993), *aff'd*, 101 F.3d 689 (3rd Cir. 1996). The court held that the NOL was property

13

of the estates and it issued an injunctive order to protect the asset and enforce the automatic stay. *See id.* at 927. Significantly, the court granted the requested relief notwithstanding that the stockholders had not stated an intent to sell their stock and the debtors had not shown the existence of a pending sale that would trigger an Ownership Change. *See id.* The court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist [the debtors] in their reorganization process. This asset is entitled to protection while [the debtors] move forward toward reorganization." *Id.* (emphasis added). The court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for a grant of preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*), 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

29. This Court routinely (a) restricts acquisitions and transfers of a debtor's stock and declarations of worthlessness with respect to a debtor's stock and (b) institutes notice procedures regarding proposed transactions to protect a debtor against the possible loss of its tax attributes. *See, e.g.*, *In re Omega Therapeutics, Inc.*, No. 25-10211 (BLS) (Bankr. D. Del. Mar. 10, 2025) [D.I. 88]; *In re Big Lots, Inc., et al.*, No. 24-11967 (JKS) (Bankr. D. Del. Oct. 21, 2024) [D.I. 578]; *In re Cano Health, Inc., et al.*, No. 24-10164 (KBO) (Bankr. D. Del. Mar. 5, 2024) [D.I. 255]; *In re Sunlight Fin. Holdings Inc., et al.*, No. 23-11794 (MFW) (Bankr. D. Del. Nov. 30, 2023) [D.I. 168]; *In re AN Glob. LLC, et al.*, No. 23-11294 (JKS) (Bankr. D. Del. Oct. 3, 2023) [D.I. 174]; *In re MediaMath Holdings, Inc., et al.*, No. 23-10882 (LSS) (Bankr. D. Del. Aug. 3, 2023) [D.I. 189]; *In re Carestream Health, Inc., et al.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) [D.I.

155]; *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 6, 2021) [D.I. 193]; *In re Mallinckrodt, plc, et al.*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 10, 2020) [D.I. 469]. In short, it is well-settled by courts in this and other circuits that section 362(a)(3) of the Bankruptcy Code stays actions that could adversely affect a debtor's NOL carryforwards.

30.     Finally, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As such, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Nixon*, 404 F. Appx. 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad." (citation omitted)); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'" (citations omitted)); *Patrick v. Dell Fin. Servs., L.P. (In re Patrick)*, 344 B.R. 56, 58 (Bankr. M.D. Pa. 2005) ("There is no doubt that § 105(a) is a 'powerful [and] versatile tool' designed to empower bankruptcy courts to fashion orders in furtherance of the Bankruptcy Code." (quoting *Joubert v. ABN AMRO Mortg. Grp., Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005))).

### III. The Procedures are necessary and appropriate and are in the best interests of the Debtors and their estates.

31.     Here, the proposed Procedures are necessary to protect the Debtors' Tax Attributes, which are potentially valuable assets of the Debtors' estates, while providing appropriate latitude for trading in Company Stock below specified levels. The Debtors' ability to meet the requirements of the tax laws to preserve their Tax Attributes may be jeopardized unless the Procedures are

15

established to ensure that the Debtors can monitor and, if necessary, object to certain acquisitions or transfers of Beneficial Ownership of Company Stock and declarations of worthlessness with respect to Company Stock. However, the Debtors recognize that trading in Company Stock below specified levels (subject to the Procedures) does not pose a serious risk to the Tax Attributes. The relief requested herein is tailored narrowly to permit certain Company Stock trading to continue, subject only to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws. The proposed restrictions are reasonable in scope because, once Company Stock is transferred or accumulated or a claim is made with respect to a worthless stock deduction, the transaction arguably might not be reversible for tax purposes, though it should be null and void under section 362 of the Bankruptcy Code. The relief requested herein is, therefore, critical to prevent what may be an irrevocable loss of the Debtors' Tax Attributes.

32. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and stakeholders. Absent this relief, the value of the Debtors' estate could suffer, possibly precipitously. Consequently, the Debtors' stakeholders would benefit if the requested relief were granted.

## **REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

33. Bankruptcy Rule 6003 empowers the Court to issue an order, within 21 days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a)(2). For the reasons discussed above, immediate and irreparable harm would result if the relief requested herein were not granted. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

34. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to continue their business operations without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

35. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

36. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity, amount or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; (c) a promise or requirement to pay any claim; (d) a waiver of any claim or cause of action of the Debtors that exists against any entity; (e) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (f) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law, or any agreement; or (g) an admission or concession by the Debtors that any lien acknowledged or satisfied under this Motion is valid, and the Debtors expressly reserves and preserves their rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## NOTICE

37. Notice of this Motion will be provided to: (a) the Office of the United States Trustee; (b) counsel to the Debtors' proposed debtor-in-possession financing lender; (c) the Internal

17

Revenue Service; (d) Securities and Exchange Commission; (e) Delaware State Treasury; (f) Delaware Secretary of State; (g) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (h) the United States Attorney for the District of Delaware; (i) the state attorneys general in states where the Debtors are authorized to do business; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking first-day relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors respectfully submit that no further notice of the Motion is required under the circumstances.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders granting the relief requested in this Motion, and grant such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Dated: March 31, 2025
Wilmington, Delaware

**WHITEFORD, TAYLOR & PRESTON LLC**[6]

*/s/ William F. Taylor, Jr.*
William F. Taylor, Jr. (DE No. 2936)
600 North King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 353-4144
Email: wtaylor@whitefordlaw.com

**WHITEFORD, TAYLOR & PRESTON LLP**
David W. Gaffey (*pro hac vice* pending)
Brandy M. Rapp (*pro hac vice* pending)
J. Daniel Vorsteg (*pro hac vice* pending)
Joshua D. Stiff (*pro hac vice* pending)
Alexandra G. DeSimone (*pro hac vice* pending)
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042-4510
Telephone: (703) 280-9260
Email: dgaffey@whitefordlaw.com
brapp@whitefordlaw.com
jdvorsteg@whitefordlaw.com
jstiff@whitefordlaw.com
adesimone@whitefordlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

---

[6] Whiteford, Taylor & Preston LLP operates as Whiteford, Taylor & Preston LLC in Delaware.