**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CTN HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10603 (TMH)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 65, 113, 117 & 167 |

**ORDER PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND DEL. BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING THE DEBTORS' ENTRY INTO STALKING HORSE AGREEMENT AND RELATED EXPENSE REIMBURSEMENT; (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) SCHEDULING AN AUCTION AND SALE HEARING; (E) APPROVING FORMS AND MANNER OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION THEREWITH; AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases, for entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing and approving certain proposed bid procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures") governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are CTN Holdings, Inc. (9122), CTN SPV Holdings, LLC (8689), Make Earth Green Again, LLC (4441), Aspiration QFZ, LLC (1532), Aspiration Fund Adviser, LLC (4214), Catona Climate Solutions, LLC (3375) and Zero Carbon Holdings, LLC (1679). The mailing address for the Debtors is 548 Market Street, PMB 72015, San Francisco, CA 94104-5401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

of the Bankruptcy Code, authorizing and approving the Debtors' entry into (but not consummation of) the Asset Purchase Agreement (substantially in the form attached to the Motion as **Exhibit B** and, together with all exhibits and schedules thereto, the "Stalking Horse Agreement"), by and among the Debtors and Inherent Aspiration, LLC (the "Stalking Horse Bidder"), pursuant to which the Debtors have agreed to sell the Acquired Assets to the Stalking Horse Bidder, subject to the terms and conditions contained in the Stalking Horse Agreement, (iii) approving the form and manner of notice of the sale of the Acquired Assets (the "Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired Assets (the "Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for the assumption and assignment of the Debtors' executory contracts (the "Contracts") and unexpired leases (the "Leases") and the form of and manner of notice of proposed cure amounts; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1.

D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b) and all other interested parties.

E. The Debtors have articulated good and sufficient reasons for the Court to approve the Bidding Procedures. Such good and sufficient reasons were set forth in the Motion, are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F. The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors' estates and creditors. The Bidding Procedures and all such steps and expenses incurred by the Debtors in connection with the implementation of the Bidding Procedures and this Order shall be deemed reasonable and appropriate and within the sound business judgment of the Debtors pursuant to section 363(b) of the Bankruptcy Code.

G. The Stalking Horse Agreement was entered into in good faith by the Debtors and the Stalking Horse Bidder, and is the result of a good faith, arms-length negotiation between the parties that are each represented by sophisticated legal counsel.

H. The Debtors have demonstrated compelling and sound business justifications for entering into the Stalking Horse Agreement and incurring the administrative obligations arising thereunder or in connection therewith, and the timing and procedures set forth therein.

I. The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed

sale, including: (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing, (iv) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (v) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, and (vi) notice of the proposed assumption and assignment of Contracts and Leases to either an affiliate of the Stalking Horse Bidder or an affiliate of any designee of the Stalking Horse Bidder (such party, the "Contract Party") pursuant to the Stalking Horse Agreement (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto. No other or further notice of the proposed Sale shall be required.

J.  The Cure Notice attached hereto as **Exhibit 2** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Contracts and Leases with proper notice of the potential assumption and assignment of their Contract or Lease, the proposed cure amounts relating thereto and the related assumption and assignment procedures; provided that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

K.  The Bidding Procedures comply with the requirements of Local Rule 6004-1.

L.  Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

M.      To the extent payable under this Order and in accordance with the Stalking Horse Agreement, the Expense Reimbursement: (i)(a) is an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and (b) shall be treated as an allowed administrative claim status in the Chapter 11 Cases pursuant to section 507(b) of the Bankruptcy Code, subject in all respects to the Carve-Out (as defined in the DIP Orders); (ii) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) is reasonably tailored to encourage, rather than chill, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets; (iv) is a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue the transaction contemplated by the Stalking Horse Agreement; and (v) is reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the proposed transaction and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.  Unless it is assured that the Expense Reimbursement is available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the transaction or otherwise be bound by the Stalking Horse Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby **GRANTED** as set forth herein.

2.      All objections filed, if any, in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, and

all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

## The Bidding Procedures

3. The Bidding Procedures attached hereto as **Exhibit 1** are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. To the extent of any conflict between the Bidding Procedures and this Order, this Order shall govern.

4. The Bidding Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher acceptable offer shall do so strictly in accordance with the terms of this Order and the Bidding Procedures.

5. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

   a. **Bid Deadline**: **May 23, 2025 at 4:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualified Bids must be actually received by the parties specified in the Bidding Procedures (the "Bid Deadline").

   b. **Auction**: **May 27, 2025 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time of the Auction, if one is needed, which will be held at the offices of proposed counsel to the Debtors, Whiteford, Taylor & Preston, LLC, 600 North King Street, Suite 300, Wilmington, DE 19801, telephonically or by video or Zoom; *provided, however*, that the Debtors, in their discretion and in consultation with the Consultation Parties, shall have the right to hold the Auction at another place or virtually, with instructions

for Qualified Bidders to participate to be provided prior to the Auction, with notice to all Qualified Bidders and any other invitees.

6. Only a Qualified Bidder that has submitted a Qualified Bid by the Bid Deadline will be eligible to participate at the Auction. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder, the Debtors may cancel the Auction, name the Stalking Horse Bidder as the Successful Bidder, and seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse Agreement.

7. If the Auction is conducted, (i) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale, (ii) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder and (iii) the Auction shall be conducted openly and shall be transcribed or videotaped.

**Approval of Debtors' Entry into the Stalking Horse Agreement**

8. The Debtors are hereby authorized to designate Inherent Aspiration, LLC, together with any designated affiliate thereof, as the Stalking Horse Bidder.

9. The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform under the Stalking Horse Agreement, subject to the solicitation of higher or otherwise better offers for the Acquired Assets (as defined in the Stalking Horse Agreement) and entry of the Sale Order. Subject to entry of the Sale Order, the Stalking Horse Agreement shall be binding and enforceable on the Debtors' estates, the Stalking Horse

Bidder and any other parties thereto in accordance with and subject to its terms, including as they relate to the Bidding Procedures and related termination provisions.

10. The Stalking Horse Agreement is authorized and approved in the form attached to the Motion as **Exhibit B**, as modified by the terms of this Order, as the stalking horse bid for the Acquired Assets (the "Stalking Horse Bid").

11. The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid, for all purposes under the Bidding Procedures Order and Bidding Procedures. For the avoidance of doubt, the approval of the sale of the Acquired Assets remains subject to entry of the Sale Order.

12. Subject to the DIP Orders, the Prepetition Collateral Agent, in its capacity as such under the Prepetition Secured Note Documents, and the DIP Agent, in its capacity as such under the DIP Facility, shall be permitted to credit bid all or a portion of the Prepetition Secured Note Obligations and/or the DIP Obligations then outstanding, respectively, or any part thereof.

13. The failure to describe specifically or include any provision of the Stalking Horse Agreement or related documents in the Motion or herein shall not diminish or impair the effectiveness of such provision as to such parties. The Stalking Horse Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, without further order of the Court.

14. The Expense Reimbursement is approved in its entirety and (i) shall, to the extent payable under the terms of the Stalking Horse Agreement, be treated as allowed administrative claim status in the Chapter 11 Cases pursuant to section 507(b) of the Bankruptcy Code, subject in all respects to the Carve-Out (as defined in the DIP Orders); (ii) shall not be subject to any bar date in these Chapter 11 Cases or any requirement to file any request for

allowance of an administrative expense claim or proof of claim; (iii) shall be payable in accordance with the terms of and subject to the conditions set forth in the Stalking Horse Agreement and (iv) shall survive the termination of the Stalking Horse Agreement and dismissal or conversion of these Chapter 11 Cases pursuant to the terms in the Stalking Horse Agreement.

15. Subject to the Bidding Procedures and entry of the Sale Order, the Debtors and Stalking Horse Bidder are granted all rights and remedies provided to them under the Stalking Horse Agreement, including, without limitation, the right to specifically enforce the Stalking Horse Agreement (including with respect to the Expense Reimbursement and the Deposit) in accordance with its terms. The Expense Reimbursement is payable to the Stalking Horse Bidder at Closing of an alternative transaction.

16. The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement, and such obligations shall be binding upon the Debtors; *provided* that, for the avoidance of doubt, consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to entry of an order approving the sale of the Acquired Assets (the "Sale Order") and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

17. This Order, and the claims granted hereunder in favor of the Stalking Horse Bidder on account of the Expense Reimbursement, shall be binding upon the Debtors' estates, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the Debtors' estates.

18. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to (i) deliver any notice provided for in the Stalking Horse Agreement, including, without limitation, a notice terminating the Stalking Horse

Agreement in accordance with the terms thereof and (ii) take any actions permitted under the Stalking Horse Agreement to terminate the Stalking Horse Agreement, solely to the extent permitted by the Stalking Horse Agreement, and assert any claims with respect to the Expense Reimbursement. All rights of the Debtors' and their estates with respect to the foregoing shall be preserved.

## Hearing and Objection Deadline

19. The Sale Hearing shall take place in this Court on **June 2, 2025 at 2:00 p.m. (Prevailing Eastern Time)**; *provided* that the Sale Hearing may be adjourned without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda. Any obligations of the Debtors set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Agreement are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

20. The Debtors must file a proposed sale order by May 21, 2025. The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse Agreement or to entry of the Sale Order is **May 23, 2025 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"). Objections, if any, **must**: (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Notice Parties"): (a) Debtors, c/o CTN Holdings, Inc., 548 Market Street, PMB 72015, San Francisco, CA 64101-5401, Attn: Statton Hammock, and c/o CTN Holdings, Inc., 13355 Noel Road, Suite 2005, Dallas, Texas 75240, Attn:

Miles Staglik; (b) proposed counsel to the Debtors, Whiteford, Taylor & Preston LLP., 3190 Fairview Park Drive, Suite 800, Falls Church, VA 22042-4510, Attn: David W. Gaffey (dgaffey@whitefordlaw.com), Brandy M. Rapp (brapp@whitefordlaw.com); (c) counsel to the Stalking Horse Bidder, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036-8299, Attn: Vincent Indelicato (vindelicato@proskauer.com) and One International Place, Boston, MA 02110, Attn: Charles A. Dale (cdale@proskauer.com), and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com), Matthew B. Harvey (mharvey@morrisnichols.com), Brenna A. Dolphin (bdolphin@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn: Rosa Sierra-Fox (Rosa.Sierra-Fox@usdoj.gov); and (e) proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), Gibbons, P.C., 300 Delaware Avenue, Suite 1015, Wilmington, DE 19801, Attn: Katharina Earle (kearle@gibbonslaw.com), and One Gateway Center, Newark, NY 07102, Attn: Robert K. Malone (rmalone@gibbonslaw.com), Brett S. Theisen (btheisen@gibbonslaw.com).

## Sale Notice and Related Relief

21.     The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved.  As soon as is reasonably practicable following entry of this Bidding Procedures Order, the Debtors will cause the Bidding Procedures, Sale Notice and Assumption Notice to be served upon the following, and their respective counsel, if known: (a) the U.S. Trustee; (b) counsel to the Stalking Horse Bidder, (c) proposed counsel to the Official Committee of Unsecured Creditors, Gibbons, P.C., 300 Delaware Avenue, Suite 1015, Wilmington, DE 19801, Attn: Katharina Earle (kearle@gibbonslaw.com), and One Gateway Center,  Newark, NY 07102, Attn:

Robert K. Malone (rmalone@gibbonslaw.com), Brett S. Theisen (btheisen@gibbonslaw.com); (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the attorneys general for the states in which the Debtors operate; (g) all parties asserting a security interest in the Acquired Assets to the extent any such interest is reasonably known to the Debtors; (h) applicable federal, state, county and city tax and regulatory authorities; (i) all entities known to have expressed a written interest in a transaction with respect to the Acquired Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Acquired Assets; (j) local, state and federal authorities and agencies that have issued licenses or permits to the Debtors with respect to the operation and use of the Acquired Assets; (k) each counterparty to the Debtors' Contracts and Leases; and (l) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  In addition, as soon as practicable, after entry of this Order, the Debtors shall publish the Sale Notice, with any modification necessary for ease of publication, once in *The New York Times National Edition* to provide notice to any other potential interested parties.

### Designation and Assumption Procedures

22.     The procedures set forth below regarding the proposed assumption and assignment of certain Contracts and Leases that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Contract Party (or the Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse Agreement, collectively, the "Assigned Contracts and Leases") in connection with the sale of the Acquired Assets are hereby approved (the "Designation Procedures").

23.     These Designation Procedures, as may be modified or supplemented by the Sale Order, shall govern the assumption and assignment of all Assigned Contracts and Leases:

a. **Cure Notice.** The Debtors shall file with the Court on or prior to May 16, 2025, a notice of the proposed assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order (the "Cure Notice"). The Debtors will serve the Cure Notice via first class mail and electronic mail, where possible, on all non-Debtor counterparties to Contracts and Leases, and their respective known counsel, and provide a copy of same to the Contract Party and the Stalking Horse Bidder. The Cure Notice shall inform each recipient that its respective Contract or Lease may be designated by the Contract Party (or the Successful Bidder selected at the Auction) as assumed and the timing and procedures relating to such designation, and, to the extent practicable (i) the title of the Contract or Lease, (ii) the name of the counterparty to the Contract or Lease, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Contract or Lease (the "Cure Amount"), (iv) the identity of the Contract Party and (v) the deadline by which any such Contract or Lease counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease. If the Debtors identify additional Contracts or Leases that might be assumed by the Debtors and assigned to the Stalking Horse Bidder, the Debtors will promptly send a supplemental Cure Notice to the applicable counterparties to such Contract or Lease.

b. **Objections**. Objections, if any, to the proposed assumption and assignment of any Contract or Lease or to the cure amount proposed with respect thereto must: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any other orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served so as to be actually received by the Notice Parties before the Sale Objection Deadline.

c. **Adequate Assurance**. Following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any. Following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, the Debtors shall serve by overnight mail (or by electronic mail, if available), evidence of adequate assurance of future performance under the Contracts and Leases provided in connection with the Successful Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, general information about the proposed assignee's financial wherewithal and a contact person with the

13

proposed assignee whom counterparties may contact if they wish to obtain further information regarding the proposed assignee (the "Adequate Assurance Notice"). Counterparties to the Debtors' Contracts and Leases shall have until **May 30, 2025, at 4:00 p.m. (ET)** to object to the Adequate Assurance Notice solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code Notice (an "Adequate Assurance Objection").

    d.    **Dispute Resolution**. Any objection to the proposed assumption and assignment or related cure of a Contract or Lease in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing or such later hearing if the objection is not resolved and the Debtors determine that an adjournment is appropriate. To the extent any such objection is resolved or determined unfavorably to the applicable Debtor, the Debtors may, subject to the terms of an agreement with the Successful Bidder, file a notice rejecting the applicable Contract or Lease after such determination.

24.    Any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or to the assumption and assignment of a Contract or Lease (i) shall be forever barred, estopped and enjoined from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates, the Contract Party, the Stalking Horse Bidder, or other Successful Bidder selected at the Auction, if any, with respect to any such Contract or Lease, (b) from contesting the assumable and assignable nature of the Contract or Lease, (c) from asserting, declaring, or taking any action based upon a default in existence on the date of the Sale Order under a Contract or Lease, and (d) asserting that the Contract Party or the Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order; (ii) shall be deemed to consent to (a) the sale of the Acquired Assets as approved by the Sale Order and (b) the assumption and assignment of the Contracts and Leases; and (iii) shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee of the relevant Contract or Lease that any conditions to assumption and assignment of

14

such Contract or Lease must be satisfied (pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise).

25. The proposed assumption and assignment of the Assigned Contracts and Leases and the Auction shall be conducted solely in accordance with the provisions of this Order, the Bidding Procedures and the Designation Procedures, as applicable.

26. Except as otherwise provided herein and in the Bidding Procedures, Local Rule 6004-1(c)(ii) is waived.

27. Nothing in this Order shall be construed to modify the requirements and provisions of sections 365(b), 365(d)(3), 365(d)(4) or 365(f) of the Bankruptcy Code.

## Other Relief Granted

28. The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

29. The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

30. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

31. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

32. This Order shall be immediately effective and enforceable upon entry hereof.

33. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

*Thomas M. Horan*

**Dated: May 14th, 2025**  
**Wilmington, Delaware**

**THOMAS M. HORAN**  
**UNITED STATES BANKRUPTCY JUDGE**